IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT CHEMICAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 04186 |
| | ) | |
| SALICYLATES AND CHEMICALS PRIVATE LIMITED, | ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons set forth in the Statement below, the Court will conduct an evidentiary hearing regarding Salicylates' motion to dismiss [25]. A status hearing will be held on Tuesday, December 15, 2015, at 9:00 a.m. to discuss the parameters of, and schedule, the evidentiary hearing.

## STATEMENT

Illinois-based Kraft Chemical Company ("Kraft") sued Salicylates and Chemicals Private Limited ("Salicylates"), an Indian chemical company, and its CEO, for tortious interference with prospective economic opportunity. The defendants removed the case from the Circuit Court of Cook County to federal district court on the basis of diversity of citizenship. *See* 42 U.S.C. §§ 1441, 1332. After this Court granted the motion to dismiss the original Complaint for lack of personal jurisdiction, Dkt. 17, Kraft filed an Amended Complaint. Dkt. 18. The Amended Complaint alleges that Salicylates committed tortious interference with prospective economic opportunity or, in the alternative, unjust enrichment by cheating Kraft out of longstanding business selling the chemical Kraftdox[1] to non-party Abbott Labs. *Id*. ¶¶ 38-59. The Amended Complaint names only Salicylates as a defendant, dropping its CEO, who was named as a defendant in the original complaint. *Id*. at 1.

Kraft and Salicylates had a business relationship dating back to 2001 whereby Kraft "provided Salicylates with the specifications for Kraftdox, the product Kraft developed for Abbott, [and] . . . Salicylates [ ] shipp[ed] Kraftdox to Abbott's receiving facility in Ireland." Am Compl. at ¶¶ 21, 25. At the heart of the Amended Complaint is Kraft's allegation that Salicylates intentionally and wrongfully interfered with Kraft's business with Abbott by: "refusing to sell Kraftdox to Kraft and ship Kraftdox to Abbott," and "solicit[ing] business from Abbott, . . . for

---

[1] The Amended Complaint refers to the compound sold to Abbott as Kraftdox, whereas the original Complaint referred to the compound as Bronidox. *Compare* Am. Compl. ¶ 16 with Compl. ¶ 3, Dkt. 1 Ex. A.

the purpose of selling Kraftdox directly to Abbott under Salicylates' own name." *Id*. ¶¶ 29, 33. According to the Amended Complaint, Salicylates "entered into an agreement that Kraft's specifications for Kraftdox were confidential and that Salicylates would only have permission to manufacture Kraftdox in connection with Kraft's sales thereof to Abbott Labs, and Kraft's specifications for Kraftdox would not be used by Salicylates without written notice to and consent from Kraft." *Id.* ¶ 23. Kraft alleges that, by violating this agreement, Salicylates was able to undermine Kraft's relationship with Abbott by "wrongfully us[ing] Kraft's proprietary and confidential specifications for Kraftdox for Salicylates' own benefit." *Id.* ¶ 44; *see also id.* ¶ 45(d) ("Salicylates intentionally interfered with Kraft's reasonable expectancy of continuing its business with Abbott . . . [by, among other things] [u]sing Kraft's specifications for Kraftdox . . . without Kraft's approval.").

Salicylates again moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[2] While the original Complaint relied solely on specific jurisdiction, the Amended Complaint asserts both general and specific personal jurisdiction. Although Kraft has failed to establish that this Court can exercise general jurisdiction over Salicylates, there are disputed material questions of fact regarding specific personal jurisdiction that the Court must resolve before it can determine whether there is personal jurisdiction over defendant Salicylates.

*1. General Personal Jurisdiction*

The general jurisdiction issue is not close. A defendant must have "continuous and systematic" contacts with a state to be subject to general jurisdiction, even if the action is unrelated to those contacts. *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984)). The Seventh Circuit has repeatedly iterated that the "threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *See, e.g.*, *Tamburo*, 601 F.3d at 701; *see also Russell v. SNFA*, 987 N.E.2d 778, 786 (Ill. 2013) ("[T]he standard for finding general jurisdiction is very high and requires a showing that the nonresident defendant carried on systemic business activity in Illinois 'not casually or occasionally, but with a fair measure of permanence and continuity.'").

As to general jurisdiction, Kraft alleges:

    a. Salicylates has at least one distributor in Illinois (e.g. Ampak Company, Inc.);

    b. Salicylates has done and is doing business in Illinois;

---

[2] Although Salicylates also moved to dismiss under 12(b)(6) in its motion, *see* Dkt. 25, it withdrew that request in its reply, Dkt. 34. As such, the Court will not consider the 12(b)(6) portion of the motion.

> c. Salicylates has stored and is storing its products in Illinois for the purpose of distribution in the United States;
>
> d. Salicylates has sold and is selling and shipping products to Illinois and/or entities domiciled in Illinois;
>
> e. Salicylates has marketed and continues to market its products in Illinois through distributors or otherwise; and
>
> f. Salicylates' President, Samir Sarvaiya ("Sarvaiya") has traveled and continues to travel to Illinois on regular basis for the purpose of doing business in Illinois or with persons located in Illinois.

Am Compl. ¶ 6. Disregarding the statements in Salicylates' affidavit that Kraft contests or contradicts (¶¶ 5-8, 13-14, 16-17, *see* Resp. at 2-5; Ex. D ¶ 10), *see Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("[T]he plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'"), Salicylates responds:

> 9. The Defendant has no registered agents or offices in the State of Illinois.
>
> 10. At all times relevant to the First Amended Complaint, work was not performed for the Plaintiff in the State of Illinois, nor does the Bronidox product manufactured by the Defendant pass through the State of Illinois. The Defendant compounded the Bronidox product and shipped to Abbott Laboratories' receiving facility in Ireland.
>
> 11. The Defendant receives no substantial income through the dealings with the Plaintiff. Specifically, only approximately 2% of the Defendant's global sales were attributed to the compounding of the Bronidox product for the Plaintiff.
>
> 12. For revenue that was generated, all amounts paid to the Defendant were sent via wire transfer to Defendant's bank account in India.

Mem. in Supp. Ex. 1 ¶¶ 8-12.

Kraft's allegations fall well short of the stringent standard for establishing general jurisdiction over Salicylates. "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). Salicylates' corporate headquarters and primary manufacturing plant are in India and only 2% of its global sales are attributed to sales of

Bronidox to Kraft. *See* Am. Compl. ¶ 2; Mem. in Supp. at 2 and Ex. 1 ¶ 11. Kraft has not introduced any evidence regarding the amount of other sales to Kraft or any other company in Illinois; thus, Kraft is far from establishing that Illinois is Salicylates' principal place of business. Although the Supreme Court has not held that "that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business," it rejected the exercise of general jurisdiction in any state "in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Daimler*, 134 S. Ct. at 760-61 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011)) (emphasis in original) ("That formulation, we hold, is unacceptably grasping.").

The Supreme Court has considered similar forum-state contacts of a foreign corporation and rejected general jurisdiction: in *Helicopteros*, the plaintiffs sued a Peruvian corporation in Texas regarding an accident that occurred in Peru. 466 U.S. at 409-10. The company's contacts with Texas were limited to the CEO's visit to Texas to negotiate a contract, acceptance of checks drawn on a Texas bank, substantial purchases of equipment (80% of its equipment) and services from a Texas company, sending personnel to Texas for training, and sending management to Texas for technical consultation. *Id.* at 411. The company never had an agent for service of process in Texas, never owned property or maintained an office in Texas, never solicited business in or sold products that reached Texas, and never signed a contract in Texas. *Id.* The Court held that the company's contacts with Texas "were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment." *Id.* at 418-19. Similarly, in *Russell*, the Illinois Supreme Court concluded that Illinois could not exercise general jurisdiction over a French company that distributed its product in Illinois and had a business relationship with a manufacturer in Illinois, but did "not have any offices, assets, property, or employees in Illinois." 987 N.E.2d at 787.

The contacts between the foreign corporations and the forum state in *Helicopteros* and *Russell*, although not identical to this case, are substantially the same in significance as the Illinois contacts here. Salicylates does not have any offices or employees in Illinois nor does it have an agent for service of process. The CEO's business visits to Illinois, "even if occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of [Illinois]." *Helicopteros*, 466 U.S. at 417 (quoting *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 518 (1923)). Nor is it sufficient that Salicylates has solicited business in Illinois: "Transient contact, such as attendance at trade shows, advertising, or mere solicitation, has been rejected as a jurisdictional basis under [the "doing business" theory of jurisdiction]." *Spartan Motors, Inc. v. Lube Power, Inc.*, 786 N.E.2d 613, 619 (Ill. App. Ct. 2003).

That Salicylates conducts business with another distributor (Ampak) that "*appears* to have an office in Illinois" is not sufficient to meet the high standard of "doing business" to be subject to general jurisdiction: Kraft provides no information regarding the amount of business Salicylates conducts with Ampak and does not even conclusively assert that this business occurs in Illinois. Resp. at 4; *see Rokeby-Johnson v. Derek Bryant Ins. Brokers, Ltd.*, 594 N.E.2d 1190, 1197-98 (Ill. App. Ct. 1992). ("[T]he standard is quite high and requires a showing that the corporation . . . carr[ies] on business activity within a state 'not occasionally or casually, but with

4

a fair measure of permanence and continuity.'"). Correspondingly, the allegation that "Salicylates' products *may* have been stored in this state" is speculation insufficient to satisfy Kraft's burden of proof to establish personal jurisdiction. Resp. at 4; *see N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) ("The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it."); *Smith v. Illinois*, No. 07 C 7048, 2009 WL 1515306, at *4 (N.D. Ill. May 27, 2009) *aff'd sub nom. Smith v. Jefferson Cty. Bd. of Educ.*, 378 F. App'x 582 (7th Cir. 2010) ("[S]peculation is insufficient to defeat [the defendant's] motion to dismiss.").

Salicylates' presence in Illinois is not "comparable to a domestic enterprise in that State." *Daimler AG*, 134 S. Ct. at 773 n.11: it does business with a distributor that *may* have an office in Illinois, only 2% of its global sales are attributed to its Bronidox sales in Illinois, and its CEO has traveled to Illinois approximately 24 times over twelve years to solicit business. "[T]here is no evidence showing that [Salicylates] engaged in the type of permanent and systemic business activity in Illinois that would justify a finding of general jurisdiction." *Russell*, 987 N.E.2d at 787.

*2. Specific Personal Jurisdiction*

With respect to specific jurisdiction, however, there are material fact disputes necessitating an evidentiary hearing. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (if any material facts are in dispute in a 12(b)(2) challenge to personal jurisdiction, the court must hold an evidentiary hearing to resolve them). As explained in this Court's first ruling on the motion to dismiss,

> [S]pecific personal jurisdiction exists when a suit arises out of or relates to the defendant's contacts with the forum, rather than an ongoing presence there. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Specific jurisdiction may be exercised in Illinois under its long-arm statute, which enumerates specific contacts justifying such jurisdiction, including "the commission of a tortious act within this State," 735 ILCS 5/2-209(a)(2), and, as a catchall, "any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States," *id*. § 5/2–209(c). In other words, the boundaries of personal jurisdiction are ultimately defined by the Due Process Clause, which requires certain minimum contacts by the defendants with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This longstanding formulation "has not changed over the years," and, moreover, "it applies to intentional tort cases as well as others." *Advanced Tactical Ordnance Systems LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 801 (7th Cir. 2014).

> When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of showing that such jurisdiction exists. *Purdue Research Found. v. Sanofi–Synthelabo*, 338 F.3d 773, 782 (7th Cir. 2003). Absent an evidentiary hearing, the plaintiff must only establish "a prima facie case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The Court must accept all well-pleaded facts in the complaint as true, and resolve any factual disputes in the declarations in the plaintiff's favor. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

Mem. Op. at 2-3, Dkt. 17.

Kraft defended its original Complaint by asserting that personal jurisdiction was established by the fact that Salicylates targeted Kraft, an Illinois citizen, and foreseeably damaged Kraft in Illinois. That argument failed, however, in light of recent Supreme Court and Seventh Circuit precedent clarifying that the locus of the harm to a plaintiff is not itself relevant to the question of personal jurisdiction; it is the defendant's contacts with the forum, not the plaintiff's, that are the critical determinants. In dismissing the initial Complaint, this Court held that the Complaint failed to allege a connection between Salicylates and the forum state of Illinois. *See* Mem. Op. at 3 ("No matter the nature of the claim, the relevant contacts are those among 'the defendant, the forum, and the litigation'—not between the defendants and the plaintiff." (quoting *Advanced Tactical*, 751 F.3d at 801)); Mem. Op. at 4 ("At bottom, Kraft's theory of personal jurisdiction is directed at its own ties to Illinois, and those of non-party Abbott. That is expressly the approach the Supreme Court rejected in *Walden*.").

In an effort to remedy this shortcoming, Kraft has supplemented the allegations of its original Complaint with allegations that Salicylates entered into a "Secrecy Agreement" with Kraft and that its breach of that Agreement, and resulting misappropriation of Kraft's proprietary specifications for Kraftdox, facilitated its ability to supplant Kraft as Abbott's direct supplier of Kraftdox. Am. Compl. ¶ 23. In addition, Kraft has supplemented its allegations about Salicylates' contacts with Abbott in Illinois, asserting, "upon information and belief," that Salicylates "solicited business from Abbott, in Illinois, in or after April of 2013, for the purpose of selling Kraftdox directly to Abbott," that "Salicylates had direct contacts with Abbott in Illinois via email, mail, phone, fax, and/or in person," that "Salicylates continues to have direct contacts with Abbott in Illinois," and that Salicylates sends invoices to and Abbott sends payments from Illinois relating to the sale of Kraftdox. Am. Compl. ¶¶ 33-37.

With respect to the Secrecy Agreement, Kraft argues that, because its claims "*at least in part* arise from Salicylates' breach of contract," the Illinois connections having to do with the Secrecy Agreement are sufficient to provide personal jurisdiction over Salicylates with respect to this lawsuit. Resp. at 6 (emphasis added). Salicylates concedes as much, and more. In its motion to dismiss, Salicylates states that Kraft's claims for tortious interference with prospective economic advantage and unjust enrichment "arise from" the Agreement. Mot. Dismiss ¶ 12, Dkt. 25. Salicylates further admits that a "fair reading of the Complaint indicates that the claim [sic]

6

for tortious interference and unjust enrichment ***directly arise*** from the Defendant's purported breach of the confidentiality and/or exclusivity agreements." Mem. in Supp. ¶ 42 (emphasis added). In acknowledging that the Secrecy Agreement is the basis of Kraft's claims, Salicylates broadens the scope of the "*litigation-specific* conduct" relevant to the specific personal jurisdiction analysis. *See Advanced Tactical*, 751 F.3d at 801 ("Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state.") (emphasis in original).

If Kraft had included in the Amended Complaint a count labeled "breach of contract" alleging that Salicylates had entered into an agreement to keep the Kraftdox specifications confidential and not to use them without Kraft's authorization, there can be no doubt that Kraft would have alleged sufficient litigation-related tortious activity in Illinois to support the exercise of personal jurisdiction. *See* 735 ILCS 5/2-209(a)(2) and (7) (the "commission of a tortious act within [Illinois]" and the "making or performance of any contract or promise substantially connected with [Illinois]" are acts submitting to jurisdiction in Illinois); *Elorac, Inc. v. Sanofi-Aventis Canada Inc.*, No. 14-CV-1859, 2014 WL 7261279, at *9 (N.D. Ill. Dec. 19, 2014) (specific jurisdiction over breach of contract claim arising from agreement negotiated and finalized in Illinois). Although Kraft did not explicitly claim breach of contract or tortious interference with contract (both of which rely on the existence of a written contract, whereas tortious interference with prospective economic advantage and unjust enrichment do not), the absence of a "count" labeled "breach of contract" is not dispositive. "Complaints need not set out either legal theories or comprehensive factual narratives. . . . Under Fed. R. Civ. P. 8 a complaint pleads *claims,* which is to say grievances. . . . Whether [a specific action] took the form of failure to make a contract, or a decision to break a contract, is a detail." *Rapid Test Products, Inc. v. Durham Sch. Servs., Inc.*, 460 F.3d 859, 860-61 (7th Cir. 2006). Salicylates has conceded that Kraft's claims can be—indeed, must be—read to have arisen from breach of the Agreement, an agreement that Kraft claims Sarvaiya signed in Illinois with an Illinois company. Thus, the facts surrounding the Secrecy Agreement are relevant to specific jurisdiction, based on Salicylates' commission of a tortious act—*i.e.* breaching the Agreement.

Those facts, however, are hotly disputed. Kraft asserts that Sarvaiya signed the Agreement at Kraft's office in Illinois in 2005, Resp. at 3, whereas Sarvaiya disputes the veracity of the Agreement, claiming that it is false and/or forged document. Reply at 2-4. Whether the Agreement purporting to bear Sarvaiya's signature is a true and accurate document is an essential precursor to whether Salicylates' alleged breach of that document provides this Court with specific jurisdiction over Salicylates. Because there are disputed facts material to the determination of personal jurisdiction, the Court must hold an evidentiary hearing at which Kraft will bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Hyatt Int'l*, 302 F.3d at 713.

Kraft submits that an evidentiary hearing regarding its allegations of Salicylates' efforts in Illinois to undermine Kraft's relationship with Abbott is also warranted. In response to these new allegations in the Amended Complaint, Salicylates submitted an affidavit of its CEO contesting the specific jurisdiction allegations: "The Defendant has no direct contact with Abbott Laboratories, Illinois. All dealings between the Defendant and Abbott Laboratories (including

7

invoicing and receiving payments) take place with Abbott Laboratories, Ireland." Mem. in Supp. Ex. 1 ¶ 19. Kraft disputes many of the allegations in this affidavit, but it does not dispute directly the veracity of this statement. Kraft maintains, however, that so many of the statements in the affidavit are untrue that the entire affidavit should be disregarded. Resp. at 3-5.

Normally, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, [however,] the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*, 338 F.3d at 783. And in a vacuum, the Court would not be inclined to grant Kraft an evidentiary hearing regarding the allegations about Salicylates' contact and conduct with Abbott in Illinois in light of its failure to directly contest Sarvaiya's denials of those allegations. But, in view of the fact that an evidentiary hearing regarding the purported Secrecy Agreement is required in any event, the Court will exercise its discretion to expand the scope of the hearing to include evidence relating to these allegations as well.

Accordingly, a status hearing will be conducted on December 15, 2015, at 9:00 a.m. to discuss matters relating to the scope and scheduling of an evidentiary hearing in connection with Salicylates' motion to dismiss the complaint for lack of personal jurisdiction.

Dated: December 3, 2015                         John J. Tharp, Jr.
                                                               United States District Judge